UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEONARD MUNGAI,

    Plaintiff,

Case No. 06-11142

Honorable Nancy G. Edmunds

v.

JAMES CLINE and LOWE'S HOME
CENTERS, INC.,

    Defendants.
_____/

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [22]**

This matter comes before the Court on Defendants James Cline's and Lowe's Home Centers, Inc.'s motion for summary judgment. Defendants' motion is GRANTED. First, as to the choice-of-law issue, Michigan law governs this diversity personal injury suit. Second, there is no genuine issue of material fact that Plaintiff cannot satisfy the threshold requirement for recovery under Michigan's No-Fault Insurance Law, Mich. Comp. Laws §§ 500.3135(1), (7).

**I.    Facts**

Plaintiff's lawsuit against Defendants arises out of an automobile accident that occurred on June 29, 2004 in Lexington, Kentucky, on Interstate-75 ("I-75"). At the time of the accident, Plaintiff was driving an 18-wheel semi-truck for his employer, Werner Enterprises, traveling northbound on I-75 to Toronto, Canada from Georgia. James Cline, an employee of Lowe's, was also traveling northbound on I-75 in a 4-door Chevrolet

Impala. The cause of accident is disputed, with each claiming the other swerved into their traveling lane on the highway.

It is undisputed that there was only minor damage to either Defendant Cline's car or Plaintiff's. Only Cline has produced evidence of any repairs; i.e., a bill for $794.00. Both vehicles were operable after the accident, and neither party was issued a citation. Moreover, after the accident, Plaintiff proceeded to Toronto, Canada where his truck was unloaded, and he then completed his return trip to Michigan. (Pl.'s Dep. at 93).

Plaintiff alleges that, as a result of this June 29, 2004, accident, he suffered a multitude of injuries, including those to his left shoulder, knee, foot, right finger and post-traumatic stress disorder. (Pl.'s Ex. 1, 7/16/04 treatment record of Dr. McKee). He was initially treated for his injuries on July 12, 2004, and was deemed "unable to drive company vehicle." (Def.'s Ex. 5, Concentra Medical Center (MI) record at A3). On July 20, 2004, Plaintiff was released to "modified duty with limited use of the left hand and no driving of the truck." (*Id.* at A24). On September 9, 2004, he was restricted from driving "until released by psychiatry." (*Id.* at A11). That report also noted "[l]imited use right hand." (*Id.*) On September 10, 2004, Plaintiff was released by psychiatry. (Def.'s Ex. 6, 9/10/04 letter to Plaintiff's employer stating that Plaintiff "is able to return to work as of today's date with no restrictions.")

Plaintiff returned to work in September 2004. A September 30, 2004, MRI Report on his left knee showed a strain and likely bone contusion, but no fracture. (Pl.'s Ex. 6, 9/30/04 MRI Report by Dr. Mullinix). An October 5, 2004, report from a treating physician observed that Plaintiff had returned to work with the duty restriction of not driving. It further observed that "[h]e moves easily, without limp, signs of pain, or signs of weakness." (Pl.'s

2

Ex. 3, Dr. Kirkman 10/5/04 report). As to his shoulders, the report noted improvement; i.e., he had "[f]ull range of motion" and "no significant pain." *Id.* As to his knee, he observed that it showed "no deformity," "no significant swelling," some complaints of pain, "[f]ull range of motion," and normal gait and strength. (*Id.*) Plaintiff was referred to an orthopedic surgeon because "a cortisone injection for the knee may be beneficial." (*Id.*) On December 10, 2004, Dr.. Mayol gave him injections to treat his bilateral shoulder rotator cuff strain and bursitis. He recommended that he get into physical therapy for his left knee and shoulders for rotator cuff strengthening. The doctor did not put him on any work restrictions. (Pl.'s Ex. 4, 12/10/04 report of Dr. Mayol).

He continued to work for his employer, including driving a truck, until he became ill on January 8, 2005. (Pl.'s Dep. at 29-34, 94; Pl.'s Ex. 4, 12/10/04 report of Dr. Mayol). After that January 2005 illness, Plaintiff never went back to driving a semi truck, and is currently receiving Social Security Disability benefits. (Pl.'s Dep. at 38-39).

Plaintiff filed this personal injury lawsuit on March 16, 2006. The matter is now before the Court on Defendants' motion for summary judgment.

## II. Summary Judgment Standard of Review

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an

element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.,* 306 F.3d 427, 432 (6th Cir. 2002).

### III. Analysis

Defendants' motion for summary judgment raises two arguments. The first addresses the law that governs this diversity matter. Defendant argues that Michigan law applies. Plaintiff, on the other hand, argues that Kentucky law applies.

**A. Choice of Law**

The parties are in federal court on the basis of diversity. Plaintiff is a resident of the State of Michigan; Defendants are a North Carolina corporation, with a principal place of business in North Carolina, and an individual who resides in North Carolina. As established in *Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938), federal courts sitting in diversity "must apply the substantive law of the state in which the court sits." *Mill's Pride, Inc. v. Continental*

4

*Ins. Co.,* 300 F.3d 701, 704 (6th Cir. 2002). This rule extends to the forum state's law regarding choice of laws." *Id* at 704 (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941)). Thus, Michigan's choice-of-law rules apply here.

Michigan's choice-of-law rule relevant to this case provides that Michigan law will apply unless there is a "rational reason" to displace it. *Sutherland v. Kennington Truck Service, Ltd.,* 562 N.W.2d 466, 471 (Mich. 1997). A two-step analysis is used to determine whether a rational reason to displace Michigan law exists. "First, we must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome. If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests." *Id.* Under this standard, Michigan courts will use another state's law where the other state has a significant interest and Michigan has only a minimal interest in the matter. *Hall v. Gen. Motors Corp.,* 582 N.W.2d 866 (Mich. Ct. App. 1998).

As to the first step, the Court observes that Plaintiff is a resident of Michigan, and Defendants are North Carolina citizens. Thus, the facts of this case are similar to those in *Olmstead v. Anderson,* 400 N.W. 2d 292 (Mich. 1987). Although the accident occurred in Kentucky, neither Plaintiff nor either Defendant is a citizen of that state. More importantly, Plaintiff has not shown that a rational reason exists to displace Michigan law with that of Kentucky. Without any supporting authority, Plaintiff merely asserts that Kentucky, unlike Plaintiff's home state of Michigan, does not contain a threshold for recovery similar to Michigan's No-Fault Insurance Law. Plaintiff ignores the fact that he chose to file his lawsuit in Michigan state court. But for Defendants' removal of his action here, the choice

of another state's law to his claim would be a moot point. Like the parties in *Olmstead*, neither party in this case is a resident of Kentucky, thus drastically reducing Kentucky's interest in having its law applied. Michigan's law should not be displaced. Because Plaintiff is a resident of Michigan, this State has a significant interest in having it's law applied to its residents.

The Court now addresses Defendants' second argument -- that there is no genuine issue of material fact that Plaintiff cannot satisfy the threshold requirement for recovery under Michigan's No-Fault Insurance Law as to injuries he suffered as a result of the June 29, 2004 accident.

**B. Michigan No-Fault Requirement - Serious Impairment of Bodily Function**

In order for Plaintiff to recover damages under Michigan's No-Fault Insurance Law, Plaintiff must prove a "serious impairment of body function… or permanent serious disfigurement." Mich. Comp. Laws § 500.3135(1). The statute goes on to define "serious impairment of body function" as "[1.] an objectively manifested impairment of [2.] an important body function that [3.] affects the person's general ability to lead his or her normal life." Mich. Comp. Laws § 500.3135(7).

The Michigan Supreme Court has outlined the following elements for determining whether this standard has been met:

> First, a court must determine that there is no factual dispute concerning the nature and extent of the person's injuries; or if there is a factual dispute, that it is not material to the determination whether the person has suffered a serious impairment of body function….
>
> Second, if a court can decide the issue as a matter of law, it must next determine if an "important body function" of the plaintiff has been impaired…. If a court finds that an important body function has in fact been impaired, it must then determine

> if the impairment is objectively manifested. Subjective complaints that are not medically documented are insufficient.
>
> If a court finds that an important body function has been impaired, and that the impairment is objectively manifested, it then must determine if the impairment affects the plaintiff's general ability to lead his or her normal life. In determining whether the course of the plaintiff's normal life has been affected, a court should engage in a multifaceted inquiry, comparing the plaintiff's life before and after the accident as well as the significance of any affected aspects on the course of the plaintiff's overall life. Once this is identified, the court must engage in an objective analysis regarding whether any difference between the plaintiff's pre- and post-accident lifestyle has actually affected the plaintiff's "general ability" to conduct the course of his life. Merely "any effect" on the plaintiff's life is insufficient because a de minimis effect would not, as objectively viewed, affect the plaintiff's "general ability" to lead his life.

*Kreiner v. Fischer,* 683 N.W.2d 611, 625-26 (Mich. 2004).

The first two prongs of the test have been met. There is a factual dispute regarding Plaintiff's injuries, and there is evidence that Plaintiff's important body functions have been impaired. Therefore, the Court examines only the latter two prongs: (1) whether Plaintiff's impairment is objectively manifested; and (2) whether this impairment affected Plaintiff's general ability to lead a normal life during the months after the June 29, 2004 accident and before the January 8, 2005 illness that totally disabled him.

### 1. Objectively Manifested Impairment

"'[I]n order for an impairment to be objectively manifested, there must be a medically identifiable injury or condition that has a physical basis.'" *Jackson v. Nelson,* 654 N.W.2d 604, 610 (Mich. Ct. App. 2002) (quoting Michigan Model Civil Jury Instruction § 36.11). In general terms, this means that there must be some medical support for the plaintiff's claims of injury, as "[s]ubjective complaints that are not medically documented are insufficient." *Kreiner,* 683 N.W.2d at 625.

7

In the months following the June 29, 2004 accident and before his January 2005 illness, Plaintiff sought medical attention from several different physicians. On July 16, 2004, Plaintiff was evaluated by Dr. McKee who diagnosed Plaintiff with multiple injuries, more specifically, left knee strain/sprain, left foot and ankle strain/sprain, right fifth finger possible fracture, left shoulder strain/sprain, and post-traumatic stress disorder (PTSD) secondary to the accident. (Pl.'s Ex. 1.) On October 5, 2004, Plaintiff was evaluated by Dr. Kirkman, who reported improvement in his symptoms, but nevertheless referred Plaintiff to an orthopedic surgeon.[1] (Pl.'s Ex. 3). On December 10, 2004, Plaintiff was evaluated by Dr. Mayol at a follow-up visit. The medical record indicates significant tenderness in the left knee and shoulders, as well as increased pain with flexion and abduction. Plaintiff was administered Depo-Medrol injections into the left and right shoulder, and Dr. Mayol recommended physical therapy for the left knee. (Pl.'s Ex. 4.) Plaintiff's post-traumatic stress disorder claim also meets the objective manifestation requirement. Plaintiff had a psychiatric evaluation, was diagnosed with PTSD, and received treatment for that condition. (Pl.'s Ex. 5.) Based on the aforementioned medical records, Plaintiff has provided sufficient medical confirmation relating to the stated injuries. Plaintiff thus meets the third element outlined in *Kreiner*.

### 2. "General Ability" to Lead a Normal Life

The final hurdle for a plaintiff seeking tort damages from an automobile accident is to show that "the impairment [of an important body function] affects the plaintiff's general ability to lead his or her normal life." *Kreiner,* 683. N.W.2d at 626. First, this is a subjective

---

[1] The record is ambiguous. However, it appears that Dr. Kenneth Kirkman is referring Plaintiff to an orthopedic surgeon for treatment of the left knee.

analysis that focuses on the individual plaintiff's particular life. Second, the analysis examines how the plaintiff's life changed following the accident, compared to his life before the accident.

Plaintiff has alleged injury to his left shoulder, right fifth finger, left knee and foot, as well as post-traumatic stress disorder. Each of these alleged injuries will be addressed separately as it relates to the final prong of Michigan's No-Fault threshold requirement.

    **a.    Left Shoulder**

Plaintiff testified that, as a result of the accident, he has aggravated pain in the left shoulder.[2] Plaintiff began physical therapy for his injury on July 16, 2004. He testifies that he had physical therapy sporadically over a two year period until November 2006. (Pl.'s Dep. at 67).

This injury does not meet the standard set out in *Kreiner*. In order to defeat Defendants' motion, Plaintiff must present evidence sufficient to show that, following the June 29, 2004 accident, his general ability to lead a normal life had changed. Plaintiff claims that he was no longer able to drive semi tractors after this accident because of continuous shoulder strain. (Pl.'s Dep. at 67). Plaintiff's testimony however, refutes this claim, as does additional evidence in the record. Plaintiff testified that, after the June 29, 2004 accident, he finished his delivery to Toronto, Canada, had the truck unloaded and drove back to Michigan. (Pl.'s Dep. at 90). More importantly, Plaintiff was released back

---

[2] Plaintiff's prior medical history indicates that Plaintiff had pre-existing injury to his left shoulder resulting from a police altercation on February 8, 1998 (Defs.' Ex. 4, Dr. Ruettinger medical records at L91) and previous re-injury on June 10, 2001 in a different motor vehicle accident. (*Id* at L64).

9

to work at Werner in September 2004 and later did drive a semi up until his January 2005 illness totally disabled him. (Pl.'s Dep. at 29-34, 93-94). Plaintiff's inability to operate a semi for a few months after his June 29, 2004 accident is not sufficient to show his "general ability to lead a normal life" changed as required under the no-fault threshold.

In *Kreiner,* the Court observed that "[a] negative effect on a particular aspect of an injured person's life is not sufficient in itself to meet the tort threshold, as long as the injured person is still generally able to lead his normal life." *Kreiner,* 683 N.W.2d at 620. The evidence presented here does not show that Plaintiff's shoulder injury prevented him from generally being able to lead a normal life.

### b. Right Pinky Finger

Plaintiff claims that he broke his right pinky finger in the June 29, 2004 accident, and this made it difficult for him to grasp the steering wheel of his large truck. (Pl.'s Dep. at 67). Plaintiff sought treatment for this finger prior to the June 29, 2004 accident. He was treated on June 2, 2004 for discomfort of his pinky finger and was scheduled for an x-ray at Garden City Hospital to determine if the right pinky finger was fractured. (Defs.' Ex. 4, Dr. Ruettinger medical records at L80.) Plaintiff testified at his deposition that his finger is crooked, was not deformed prior to the accident, and that he has been told by doctors that the finger will eventually straighten out. (Pl.'s Dep. at 71).

Plaintiff's injury to his right pinky finger fails to meet the requirements set forth under the *Kreiner* threshold. Plaintiff must present evidence showing that, following the June 29, 2004 accident, his "general ability to lead a normal life" changed because of this injury. Plaintiff has not provided the Court with any such evidence. In fact, since returning to work for his employer, Plaintiff continued to drive a semi until his subsequent illness in January

10

2005. He also testified that, as of March 2007, he will graduate from a driver education program and become a certified driving instructor, and that this injury would not prevent him from working as a certified driving instructor. (Pl.'s Dep. at 62, 69-71). Thus, like the plaintiff in *Straub*, Plaintiff here was able to resume almost all normal activities and resume gainful employment within a few months of the June 29, 2004 accident. As discussed above, "[a] negative effect on a particular aspect of an injured person's life is not sufficient in itself to meet the tort threshold, as long as the injured person is still generally able to lead his normal life." *Kreiner,* 683 N.W.2d at 620. For these reasons, there is no genuine issue of material fact that Plaintiff's right pinky finger injury does not prevent his general ability to lead a normal life.

    **c.**    **Left Knee, Foot and Ankle**

Plaintiff alleges that he injured his left knee, foot and ankle during the June 29, 2004 accident. Plaintiff was first treated for these injuries on July 12, 2004 at Concentra Medical Centers in Livonia, Michigan, and was diagnosed with an ankle and knee sprain. The medical report indicates that neither the knee nor the ankle showed any signs of deformity, and the knee joint was stable. Plaintiff was not treated for any foot injury at this visit. (Pl.'s Ex. 8 and Defs.' Ex. 5, 7/12/04 Concentra MI Medical Report). Plaintiff was treated again on July 16, 2004 in Ohio. Plaintiff was diagnosed with left knee strain/sprain and left foot and ankle sprain. The medical record indicates that Plaintiff experienced tenderness at each site of the alleged injury, with minimal swelling at the ankle site. Plaintiff was advised to continue ibuprofen and use alternating ice and heat. (Pl.'s Ex. 1 and Defs.' Ex. 7, 7/16/04 Dr. McKee Report).

On September 9, 2004, Plaintiff's treatment records report improved symptoms stating, that he "[f]eels better from a psychological standpoint and from the standpoint of generalized aches and pains resulting from the automobile accident approximately 2-1/2 months ago. Patient has not been working because no light duty available and not able to drive secondary to drowsiness. Patient taking prescribed medications and has noted improvement in muscular pain." (Defs.' Ex. Concentra MI Medical Records at A10). As of September, Plaintiff had attended physical therapy four times and reported "feeling better," while describing the pain as mild, moderate, sharp, recurrent, and intermittent. (*Id*). Plaintiff indicated that he had experienced "significant improvement." (*Id.*) Plaintiff was to return for evaluation in one week, and was not to drive until released "by Psychiatry." (*Id.*) The report also noted "[l]imited use" of Plaintiff's right hand.

Plaintiff was released to work by Oakland Psychological Clinic on September 10, 2004 without restrictions. After the June 29, 2004 accident, Plaintiff did return to work and did drive a semi until his January 2005 illness. In January 2005, Plaintiff was terminated from Werner Enterprises while he was hospitalized for a severe viral infection at Garden City Hospital in Garden City, Michigan. Prior to this hospitalization, Plaintiff was gainfully employed by Werner driving a semi-truck. (Pl.'s Dep. at 29-34).

Again, to defeat Defendants' motion for summary judgment, Plaintiff must present evidence showing that, following the June 29, 2004 accident, but before his January 2005 illness, his general ability to live a normal life had changed as it existed before that June 29 2004 accident. Applying the test set forth in *Kreiner* and its progeny, *McDanield v. Hemker*, 707 N.W.2d 211 (Mich. Ct. App. 2005), Plaintiff has failed to do so.

Plaintiff's reliance on *McDanield* is misplaced. In *McDanield,* the court held that the plaintiff had established a serious impairment of body function. In reaching this conclusion, the court noted that, as a result of an accident, the plaintiff was out of work for six to seven months, could no longer engage in recreational activities, had difficulty sleeping, was treated by physicians for a number of years, and those physicians had opined that she would experience pain for the rest of her life. *McDanield*, 707 N.W. 2d at 219. Unlike the plaintiff in *McDanield,* Plaintiff here was only out of work for approximately two months, reported improved symptoms at follow-up appointments, provided no evidence that his ability to engage in recreational activities had been impaired, returned to work and was able to drive a semi again before his January 2005 illness, and is currently employed as an instructor at Great American Truck Driving School. (Pl.'s Dep. at 29-36). That Plaintiff was unable to drive a tractor trailer for a short time after the June 29, 2004 accident is insufficient to overcome summary judgment. "A negative effect on a particular aspect of an injured person's life is not sufficient in itself to meet the tort threshold, as long as the injured person is still generally able to lead his normal life." *Kreiner,* 683 N.W.2d at 620. Plaintiff has not shown that his knee, foot, or ankle injuries prevent him from generally leading a normal life.

### d. Post-Traumatic Stress Disorder

Plaintiff alleges that, as a result of the June 29, 2004 accident, he suffers from post-traumatic stress disorder. This diagnosis is based on subjective complaints that Plaintiff relayed during his office visit on July 12, 2004. (Defs.' Ex. 5, Concentra MI Medical Records at A2). Plaintiff has not provided any case law or other legal authority supporting his position that mere subjective complaints of PTSD are sufficient to overcome the threshold

requirement under Michigan's No-fault Insurance Law. Even assuming such authority exists, Plaintiff has not shown that his PTSD has affected his general ability to lead a normal life. Plaintiff was initially diagnosed with PTSD on July 12, 2004. (*Id.* at A2). On September 9, 2004, Plaintiff reported that "[h]e feels the pattern of symptoms is improving and feels better from a psychological standpoint . . . . Feeling much improved from a mood/psychological standpoint. . . ." (*Id.* at A10). As to Plaintiff's PTSD, he was released back to work with no restrictions on September 10, 2004. (Defs.' Ex. 6, Oakland Psychological Clinic, P.C. 9/10/04 letter). As of the date of his deposition, Plaintiff was employed at Great American Truck Driving School, attended instructor training courses at Wayne State University, and served as a Pastor and counselor to the Kenyan community. (Pl.'s Dep. *at* 34-37, 95). Plaintiff has not presented any evidence showing that a genuine issue of material fact exists for trial as to his general ability to lead a normal life because of his suffering from PSTD as a result of the June 29, 2004 accident.

## IV.    Conclusion

For the above-stated reasons, Defendants' motion for summary judgment is GRANTED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: August 14, 2007

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 14, 2007, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager